In the Matter of EDWARD J. O'CONNOR, Respondent, against STATE BOARD OF PAROLE, Appellant.

Third Department, November 14, 1945.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; Wendell P. Brown, First Assistant Attorney-General, Patrick H. Clune* and *Ruth Kessler Toch, Assistant Attorneys-General* of counsel), for appellant.

*Edward J. O'Connor,* respondent in person.

FOSTER, J. This is an appeal by the State Board of Parole from an order of the Supreme Court at Special Term which directed the release on parole of petitioner, Edward J. O'Connor, who was serving an indeterminate sentence of imprisonment. Petitioner had been convicted June 28, 1940, upon a plea of guilty, of the crime of grand larceny, second degree, and was sentenced to an indeterminate term of not less than two and not more than four years' imprisonment. His maximum sentence would have expired July 1, 1944.

Petitioner became eligible for parole consideration on September 16, 1941, his minimum sentence having been reduced by good conduct, pursuant to section 230 of the Correction Law. Petitioner appeared before the Parole Board on September 16, 1941, and was denied parole. Thereupon he applied to the Supreme Court at Special Term for an order of certiorari to review the action of the Parole Board, and his application was granted. An appeal was taken by the Parole Board and the order of certiorari was affirmed by this court without opinion (264 App. Div. 797). A referee was thereafter appointed to hear and report on the issues, and a series of extensive hearings were held.

The referee recommended in his report that petitioner's prayer for relief should be granted, on the ground that "petitioner complied with all the conditions on his part to be performed in order to earn parole and that the Parole Board failed in its duty", as set forth in his report. Upon this report the court at Special Term granted the order appealed from.

The report of the referee is much too lengthy for analysis in detail within the fair limits of an opinion. The gist of it is to the effect that petitioner was not given sufficient consideration; that his case was not sufficiently investigated by the Parole Board to obtain the facts necessary for a complete and reasonable understanding of the case. The referee also took occasion

to observe that the duties of the Parole Board appeared to be too vast and comprehensive for three members adequately to perform their functions in the time available to them.

Petitioner goes somewhat further in his argument on appeal and avers that the testimony before the referee established six positive violations by the board of mandatory sections of the Correction Law. He also asserts that the same evidence shows the action of the board to have been arbitrary, malicious and capricious. In addition he claims that the discretion vested in the board is an illegal grant of power because no standards for its exercise have been fixed by the Legislature.

There is no support whatever for the argument that the grant of discretion by the Legislature to the Parole Board is unconstitutional because no standards are fixed. Section 213 of the Correction Law fixes the standards, and provides that a prisoner may be released on parole only when the Board of Parole is of the opinion that there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. Section 214 of the same statute provides the method of release.

The recommendation of the referee that petitioner was entitled to relief because he had complied with all of the conditions on his part to be performed in order to earn a parole indicates a misapprehension of the Correction Law. Section 213 specifically provides that parole cannot be earned merely as a reward for good conduct or efficient performance of duties assigned in prison. And of course the observation of the referee that members of the Parole Board do not have sufficient time to make adequate investigations concerns a matter that is legislative in nature and not judicial.

We forbear from discussing the merits of petitioner's fitness for parole because no judicial review of such a matter on the merits may be had (*Matter of Hines* v. *State Board of Parole,* 293 N. Y. 254). The action of the Parole Board in releasing prisoners is deemed a judicial function, and not reviewable if done according to law (Correction Law, § 212). Prior to the decision in the *Hines* case there may have been some doubt as to the precise meaning of the phrase " if done according to law." If such a doubt existed it has now been resolved by this language of the opinion in that case: " Thus so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts." We are therefore limited in our review of this proceeding to

a consideration of whether the proof shows that the board violated any positive and pertinent statutory requirements as charged by petitioner.

It is charged: That a proper and timely investigation of petitioner's case was not made (Correction Law, § 211); that members of the board willfully failed to study prisoners confined in State prison (§ 210); that members of the board did not devote their whole time to their duties (Executive Law, § 115); that a report was not obtained from the Superintendent of Industries of the prison where petitioner was confined (Correction Law, § 214); that a full hearing on petitioner's case was not had (Correction Law, § 214; Executive Law, § 115); and that the board had no jurisdiction to decide petitioner's fitness for parole on September 16, 1941, since the Governor's warrant reducing his minimum sentence was not signed until September 25, 1941.

We do not find that the evidence taken before the referee sustains any of the foregoing charges that are pertinent to petitioner's case, except possibly the charge that a report from the Superintendent of Prison Industries was not obtained. As to the existence of such a report the evidence is not clear, being simply to the effect that such a report was not in the board's folder. This we think is not sufficient to support even an order directing the board to reconsider petitioner's case, to say nothing of an order directing his release.

In several instances petitioner has misconstrued the statute. He was not entitled to a hearing, or even to make an application for release. The board was required to have him appear, not to give him a hearing, but only to personally examine him (§ 214), and the extent of such an examination was necessarily within its discretion. Although it may appear that the examination given was decidedly cursory this is not a matter with which the courts may interfere. The charge that some of the members of the board devoted a part of their time to outside activities, while apparently true, is not a matter relevant to petitioner's case. Consideration of petitioner's case before the Governor's warrant had been signed was not only proper but strictly in conformity with the statute (Correction Law, § 214).

On the general charge that the board was arbitrary and malicious petitioner cites the report of one of its members against him, and asserts that such report was motivated by prejudice. The statute requires the report of a member (§ 214), giving his personal views and recommendations, and it is beyond

the power of any court to review or control the tenor of such a report. At the instance of petitioner the release of many other prisoners was shown, all of them convicted of vicious crimes. This was improper. Since the courts are without power to review petitioner's case on the merits, they are equally without power to review other cases for the purpose of making comparisons.

Upon all the facts disclosed we are forced to the conclusion that petitioner failed to show any violation by the Parole Board of a positive statutory requirement pertinent to his case. And we may add that in any event the court below was without power to direct his release unconditionally or on parole. The most it could have done was to have directed a further consideration of his case.

The order appealed from should be reversed, without costs, and petitioner remanded to custody.

HILL, P. J. (concurring). The Correction Law, as construed by the courts, is the source of the powers of the Board of Parole. " The action of the board of parole in releasing prisoners shall be deemed a judicial function and shall not be reviewable if done according to law " (Correction Law, § 212). Concerning the reasons for release, it is indicated that a prisoner is not to be released as a reward for good conduct or the efficient performance of duties, " but only if the board of parole is of opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society " (§ 213). Petitioner-respondent has been several times charged with criminal conduct in connection with efforts to obtain Civil Service positions for proteges and students. He was convicted on such charge by his plea of guilty on June 28, 1940, committed to Sing Sing Prison on July 1, 1940, under an indeterminate sentence of not less than two nor more than four years. He became eligible for parole on October 30, 1941. On September 16, 1941, the Parole Board refused to grant parole and decided that he should serve his maximum term, less compensation. On December 30, 1940, seven months after he entered prison, and nine months before he was eligible for parole, Commissioner Bates of the Board of Parole wrote the other members concerning the petitioner: " Anybody who has ever had anything to do with the difficulties of administering public service can have nothing but contempt for this individual who made money by promising people Civil

Service jobs, who boasted that he had all the answers, and in addition to that, took money to ' bribe ' public officials. He modestly admits that as to the Civil Service Institute, ' I was the school.' * * * This was a bare-faced and deliberate attempt to pollute the Civil Service on a wholesale basis. Teaching hundreds of men and women how to trick their way into public service, even to inducing them to believe that a bribe was necessary to get appointed. I would be glad to vote to hold this man for M. L. C. (Maximum less Compensation)."

It was within the province of the judge who received the plea of guilty to determine the length of the sentence. Thereunder petitioner was eligible to parole after service of sixteen months. It was then the duty of the Parole Board to parole him if in their opinion there was reasonable probability that he would live and remain at liberty without violating the law, and that his release would not be incompatible with the welfare of society. It might seem that a commissioner was not acting in accordance with section 213 of the Correction Law earlier quoted, who determined because of the nature of the crime that petitioner might not be paroled at any time until the full term had been served less statutory " compensation ". However, our court of last resort has said: " There are no statutory limitations upon the power of the Board upon due consideration of such matters, in its absolute discretion to refuse to release any prisoner upon parole." (*Matter of Hines* v. *State Board of Parole*, 293 N. Y. 254, 258.) In an earlier part of the opinion it is stated: " The Board is to consider the prisoner's attitude towards society, towards the judge who sentenced him, towards the district attorney who convicted him and towards the policeman who arrested him and how the prisoner regards the crime for which he is imprisoned and his previous criminal career."

Recognizing the power of the court to construe the Correction Law, I concur for reversal.

HEFFERNAN, BREWSTER and LAWRENCE, JJ., concur with FOSTER, J.; HILL, P. J., concurs in a separate memorandum.

Order appealed from reversed on the law and facts, without costs, and petitioner remanded to custody.